[L. A. No. 9576. In Bank.—October 24, 1929.]

J. A. SMITH et al., Respondents, v. CHARLES KIRKPATRICK et al., Appellants.

Frank P. Doherty for Appellants.

418

W. W. Hyams, Hyams & Himrod and Aubrey Devine for Respondents.

LANGDON, J.—Plaintiffs brought this action as assignees of the Orange County Drilling Company, for the benefit of the creditors of said company. They alleged that the defendants and each of them had received $215,000 from said company for the use of said company. This allegation was denied by defendants. The essential facts were stipulated by the parties to be as follows: Some time in September, 1922, the Orange County Drilling Company entered into a contract with the Kirkpatrick Bros. Syndicate to drill a well at Santa Fe Springs for a price of $155,000, and this consideration was paid $90,000 in cash and $65,000 in units of the Syndicate. In October, 1922, the Kirkpatrick Syndicate No. 2, an independent syndicate, made and entered into a contract with the Orange County Drilling Company for the drilling of a well at Santa Fe Springs for the total consideration of $175,000. In November, 1922, the Kirkpatrick Syndicate No. 3 made and entered into a contract with the Orange County Drilling Company for the drilling of a third well at Santa Fe Springs for a total cash consideration of $175,000. At the time of making the contracts, and at all times mentioned in the complaint, the defendants, C. H. Kirkpatrick, W. O. Kirkpatrick and Willis H. Cates, were the trustees of Kirkpatrick Bros. Syndicate, and the defendants C. H. Kirkpatrick and Willis H. Cates were the trustees of Kirkpatrick Syndicates 2 and 3. During the times mentioned in the complaint R. W. Edens was president and general manager of the Orange County Drilling Company and owner of all the stock in the company, and he returned to C. H. Kirkpatrick, W. O. Kirkpatrick and Willis Cates said units of Kirkpatrick Syndicate of the par value of $65,000, which said units were part of the consideration for the drilling of the well provided for in the contract of September, 1922. These units were sold afterward by the defendants for about $40,000 in cash. R. W. Edens, in his official capacity, returned to the defendants C. H. Kirkpatrick and Willis H. Cates $75,000 in cash out of the contract price for drilling the second well and also returned to said C. H. Kirkpatrick

and Willis H. Cates a like sum out of the contract price for drilling the third well.

The judgment went against the three defendants in the sum of $190,000. The theory upon which this judgment was predicated is not clear from the record, but it is immaterial, for we think that the agreed facts do not entitle the assignees of the Orange County Drilling Company to recover.

The plaintiffs are not suing as individual creditors who have been misled, but as assignees to hold in trust for all creditors. As such they can have no greater right than their assignor. (Sec. 3460, Civ. Code.) In the case of *Francisco* v. *Aguirre,* 94 Cal. 180 [29 Pac. 495, 496], the court said: "Upon the principle that an assignor cannot confer upon his assignee any greater right than he himself had in the property, it is held, in an almost unbroken line of authorities, that, in the absence of any statute giving such power, the assignee cannot maintain an action to recover property that had been conveyed by his assignor in fraud of his creditors. This rule rests upon the ground that the assignee is merely the representative of his assignor, and does not represent the creditors, and that, notwithstanding the assignment, they are not bound to accept its provisions, but may themselves subject such property to the satisfaction of their debts. This right is held by them, not as beneficiaries under the assignment, or by virtue of any of its provisions, but as creditors of the assignor, and wholly independent of its provisions.

"Under the common law of assignments, the assignee stands in the place of the assignor, and can assert no claim to property which the assignor might not. The assignment, therefore, does not carry with it to the trustee the title to property which the assignor has previously transferred in fraud of his creditors, for the purpose of hindering, delaying and defrauding them. (Citing cases.)"

The cases of *Ruggles* v. *Cannedy,* 127 Cal. 290 [46 L. R. A. 371, 53 Pac. 911, 916, 59 Pac. 827], and *First Nat. Bank* v. *Menke,* 128 Cal. 103 [60 Pac. 675], also contain language directly in point and in favor of the appellants in this action. In the former case it is said: "The failure to observe the well-defined distinction between the

powers of the assignee in insolvency who thus represents the creditors, and those of an assignee for the benefit of creditors, who is the representative of the assignor, has led to much conflict of authority upon this question. In this state it is held that an assignee for the benefit of creditors may not maintain such an action, but the distinction between such an assignee and the assignee in insolvency is clearly pointed out."

A later case than those hereinbefore cited and which is directly in point and applies the rule of the earlier cases to a voluntary assignment other than an assignment to the sheriff under the provisions of section 3449 of the Civil Code is *Moore* v. *Schneider*, 196 Cal. 380 [238 Pac. 81]. That case, together with the others cited herein, is conclusive against the right of the plaintiffs to recover.

The judgment is reversed.

Richards, J., Seawell, J., Curtis, J., Preston, J., and Waste, C. J., concurred.